# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ELMER RILEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-02128-RBP-JEO |
| | ) |
| WARDEN D.B. DREW, et al., | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. (Doc. 1). The petitioner, Elmer Riley, is a federal inmate incarcerated at the Federal Correctional Institution in Talladega, Alabama.[1] Upon consideration, the court finds that it is due to be denied and dismissed with prejudice.

### I.   BACKGROUND

### A.   Procedural History

In his petition, Riley challenges his September 12, 2006, prison disciplinary conviction for which he lost his prison job and living quarters. In support of his petition, Riley claims that he was denied due process when he was issued an incident report and dismissed from his UNICOR job and special housing. Riley also claims his right to equal protection was violated because he was issued

---

[1] The petitioner names as respondents Federal Bureau of Prisons, Warden D.B. Drew, and Charles Ratledge. "[T]he proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004), *quoting* 28 U.S.C. § 2242. Since the petitioner is incarcerated at FCI Talladega, Alabama, the proper respondent is the Warden of that facility.

the incident report based on his race and disability. As relief for the alleged violations, the petitioner requests that the incident report be expunged, he be reinstated, with back pay, to his original UNICOR job assignment, and at the same pay rate he was receiving at the time he was dismissed from his position. The petitioner also seeks declaratory relief.

The respondents filed an answer to the court's January 30, 2008, Order to Show Cause. (Doc. 5.) The respondents acknowledge that the petitioner has exhausted the administrative remedies available to him, but argue that the petition lacks merit and is due to be denied. By order of the court, the parties were advised that the respondents' answer would be treated as a motion for summary judgment. The petitioner was advised that he must comply with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE in responding to the motion for summary judgment. On May 15, 2008, the petitioner filed a traverse. (Doc. 9.)

### B. Factual Allegations[2]

On September 8, 2006, the petitioner received an incident report for "Being Unsanitary or Untidy in Accordance with Posted Standards, Code 330." (Doc. 5, Attach. 2.) Code 330 states: "Being unsanitary or untidy; failing to keep one's person and one's quarters in accordance with posted standards." (Doc. 5, Ratledge Decl. at 2.) Unit Manager, Charles Ratledge, wrote the incident report during a routine search of the cells while inmates were at work. *Id.* Ratledge found potato chips in the petitioner's laundry bag. *Id.* Ratledge noted in the incident report that information regarding food in the cells was posted in the unit and discussed during several previous town hall meetings that he conducted. *Id.* The incident report was delivered to the petitioner on the

---

[2] The following facts appear to be undisputed or, if disputed, taken in a light most favorable to the petitioner.

same day and an investigation into the incident report was conducted that evening by another staff member. *Id*.

On September 12, 2006, the petitioner had a hearing before the Unit Discipline Committee (hereinafter "UDC"). (Doc. 5, Attach. 2.) At the hearing, the petitioner provided the following statement: "I went to the Commissary and did not have time to put it up. It was mine." *Id*. At the hearing, the UDC determined that the incident did occur based on the body of the report and the statement by the petitioner. *Id.* The UDC found that the petitioner committed the prohibited act as charged and he was sanctioned to loss of his UNICOR job and housing quarters.[3] *Id.* According to Program Statement 5270.07, Discipline and Special Housing Units, several sanctions can be imposed for a violation of Code 330, including sanction "H-Change housing (quarters)," and "J-Loss of Job." (Doc. 5 at 6-7.)

Prior to September 8, 2006, several memorandums were posted regarding sanitation standards. (Doc. 5, Ratledge Decl. at 3.) These memorandums were the result of the excessive amount of property being stored in the housing units which presented sanitation and safety concerns. *Id*. The goals of the restrictions were to prevent fires and to prevent roach and rodent infestation. *Id*. These restrictions were required in all housing units in the institution. *Id.* A memorandum from Warden Drew was posted on May 16, 2006. (Doc. 5, Ex. 4.) Ratledge posted a memorandum on May 18, 2006. (Doc. 5, Ratledge Decl. at ¶ 9, & Ex. 4.) On May 22, 2006, Associate Warden Mary Mitchell distributed a memorandum of talking points for Unit Managers to utilize in their town hall meetings. (Doc. 5, Ex. 4.) Together, these memorandums provided in relevant part:

---

[3] Riley returned to work in UNICOR and to the Sigma housing unit on February 6, 2007. (Doc. 5, Ratledge Decl. at 3.)

> 1. All property stored outside inmates' lockers will be considered contraband and confiscated and disposed of as such;
>
> 2. Only dirty laundry can be stored in laundry bags and anything else will be confiscated;
>
> 3. The only items authorized to stay outside of the locker are books, magazines, toilet tissue, and laundry bag containing dirty laundry; and
>
> 4. Inmates who have Food Service items in their possession will receive disciplinary action.

(Doc. 5, Ex. 4.)

During this time, and each month thereafter, Ratledge personally held several "town hall" meetings with inmates on Sigma Unit regarding the sanitation standards. (Doc. 5, Ratledge Decl. at 4.) Ratledge advised inmates that unit staff would begin issuing incident reports for all violations, even minor infractions. *Id*. Ratledge also encouraged inmates to speak with him personally if they had questions or did not understand matters discussed during the town hall meetings. *Id.*

The petitioner claims that the incident report should be expunged because he was not personally provided with copies of the memorandums concerning sanitation standards and Ratledge "failed to insure that [petitioner], a 61 year old man who suffers from lack of education, and attention disorder and is a special education student, understood the contents of the memorandum]." (Doc. 2 at 4.) The petitioner further claims he should not have received an incident report because the memorandums state that anything found in the laundry bag, other than dirty laundry, would be confiscated. He reasons that the memorandums did not state that an inmate would receive an incident report and were, therefore, vague and ambiguous. The petitioner also argues that bags of potato chips are not contraband since they are sold in the prison's commissary. He further asserts that it is "impossible" for one bag of potato chips to amount to being unsanitary or untidy and that

the respondent's interpretation of Code 330 "shocks the conscience."  (Doc. 2 at 5.)

The petitioner, who is African-American, also suggests that he was issued an incident report because of his race and alleged disabilities.  Specifically, the petitioner claims forty (40) inmates violated Code 330; however, Ratledge "hand-picked one group of inmates" to issue incident reports. (Doc. 2 at 7.)

## II.   DISCUSSION

### A.   Due Process

It is true that a prison inmate has a right not to be deprived of a protected liberty interest without due process of law.  Therefore, to prevail on his claim that his dismissal from his prison job and housing quarters violated his constitutional right to due process, the petitioner must establish that he had a liberty interest in the job and housing unit.  *See Sandin v. Conner*, 515 U.S. 472, 487 (1995) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty . . . ."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)).

The United States Supreme Court in *Sandin v. Conner* explained that state law, under certain circumstances, can create a liberty interest protected by the Due Process Clause in the context of "disciplinary changes in a prisoner's conditions of confinement . . . ." *Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir. 1996)( *quoting Sandin v. Conner*, 515 U.S. 472 (1995)).  Those state created interests would be "limited to freedom[s] from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force, *nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*."  *Id.* (emphasis added).

In the present case, the sanctions imposed against the petitioner by the UDC is neither atypical nor a significant hardship under *Sandin*. Specifically, the loss of a UNICOR job and housing in a particular unit is not a dramatic departure from the ordinary conditions of confinement, nor is it a major disruption in the petitioner's environment. *See Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (no interest in continuing UNICOR job); *Boglin v. Weaver*, 2001 WL 228172, at *5 (S.D. Ala. March 1, 2001)(Plaintiff did not suffer a deprivation of a constitutional interest when he was removed from his job.); *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (no interest in retaining position as prison law clerk); *Sheeran v. Buyer*, 51 F.3d 1170, 1174 (3rd Cir. 1995)(inmate has no right to be placed in a cell of his choice). While the sanctions levied against the petitioner may have been harsh, the petitioner has not established that losing his UNICOR job and housing quarters, compared with conditions in general population, created a "major disruption" in his environment or unexpectedly exceeded his sentence in a manner that would evoke the protections of the Due Process Clause. *Sandin v. Conner*, 515 U.S. at 486-87.

Even if the petitioner could establish that the loss of his job and special housing implicated a liberty interest, there is sufficient evidence in the record to demonstrate that he was afforded due process. "The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). Instead, when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974,] and whether 'some evidence' exists which supports the hearing officer's determination." *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994).

In *Wolff v. McDonnell*, the United States Supreme Court set forth the following minimum

due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of a protected liberty interest: (1) "written notice of the charges must be given" to the inmate at least 24 hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety of correctional goals"; and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66.

The plaintiff does not challenge the disciplinary proceeding itself. Therefore, this court must uphold the disciplinary decision if "'some evidence' exists which supports the hearing officer's determination." The plaintiff admitted that he left a bag of potato chips in his laundry bag. Thus, the evidence relied upon by the Disciplinary Hearing Officer in support of her finding that the petitioner committed the disciplinary infraction is sufficient to meet the "some evidence" standard.

The petitioner claims he was not personally given copies of the memorandums regarding sanitation requirements and the memorandums were vague and ambiguous. "Generally, due process prohibits excessively vague laws. When, however, courts analyze whether prison regulations comply with due process, the degree of specificity required is not the same as that required for those laws applicable to free citizens." *El-Amin v. Tirey*, 817 F. Supp. 694, 701 (W.D. Tenn. 1993). "This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline . . . is essential to safe and efficient prison administration." *Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992); *see Wolff v. McDonnell*, 418 U.S. 539 (the Court held that inmates have due process rights, but such rights must be viewed in light of prison setting and the necessity of the state to maintain an acceptable level of personal safety

within these institutions.).

However, balanced against the needs of the institution, " is the fundamental requirement that persons be able to avoid conduct that will lead to severe sanction." *See Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984). "Because 'legalistic wrangling' over the meaning of prison rules 'may visibly undermine the [prison] administration's position of total authority,' federal courts have deferred to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'" *Id*. (Internal citations omitted).

The plaintiff does not dispute that: (1) memorandums concerning the sanitation standards were posted; (2) town hall meetings were held regarding the sanitation standards; (3) Ratledge encouraged those who did not understand the requirements to ask questions; and (4) all inmates are given a copy of rules then they come into the institution. The plaintiff does not claim he notified anyone that he did not understand the rules and was denied the pertinent information.

Based on the foregoing, the respondent's motion for summary judgment regarding the petitioner's due process claims is due be granted and those claims are due to be dismissed.[4]

### B.    Equal Protection Claims

To prove a cognizable claim under the Equal Protection Clause, a prisoner must demonstrate: (1) that he has been treated differently from other similarly situated inmates, and (2) that this discriminatory treatment was based on some constitutionally impermissible basis, such as race. *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Moreover, to establish an equal protection violation, a prisoner must establish the existence of intentional or purposeful discrimination. *See*

---

[4] The petitioner's request for reinstatement to his UNICOR job and special housing is moot as the petitioner returned to work in UNICOR and the Sigma housing unit on February 6, 2007.

*Whitus v. Georgia*, 385 U.S. 545, 550 (1967). Absent any allegation of a discriminatory purpose, "[m]ere error or mistake in judgment . . . does not violate the equal protection clause. There must be intentional discrimination [by the defendant] . . . . Even arbitrary administration of [prison rules], without purposeful discrimination, does not violate the equal protection clause." *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987). In the case where a plaintiff presents no evidence of purposeful discrimination, defendants are entitled to summary judgment. *See McCleskly v. Kemp*, 481 U.S. 279, 292-93 (1987).

First, the petitioner provides no information concerning the races or disability status of the forty (40) inmates he alleges were not disciplined. Therefore, he has not demonstrated that he was similarly situated to inmates of other races who were not disabled. Second, the petitioner fails to present any evidence, probative or otherwise, that discrimination, on any grounds, constituted the motivating factor in the decision to discipline him for violating Code 330. Indeed, he fails to dispute that Ratledge, who himself is African-American, issued incident reports September 8, 2006, to a Hispanic inmate, a White inmate, and three African-American inmates. Additionally, while the petitioner claims generally that he is uneducated, a special education student, and has attention deficit disorder, there is no evidence in the record to support his claim. Even if the petitioner does suffer from these conditions, he does not allege to what degree he suffers from them.

The respondent's motion for summary judgment regarding the petitioner's equal protection claims are due to be granted and those claims are due to be dismissed.

### III. CONCLUSION

In accord with the foregoing, the petition for a writ of habeas corpus is due to be denied and dismissed. An appropriate order will be entered.

The Clerk is directed to serve a copy of this Memorandum Opinion upon the petitioner and counsel for the respondents.

Dated this 18th day of September, 2008.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**